UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELODY ARMSTRONG,

    Plaintiff,

  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:13-cv-743

Dlott, J.
Bowman, M.J.

### REPORT AND RECOMMENDATION

Plaintiff Melody Armstrong filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Plaintiff presents two claims of error, both of which the Defendant disputes. Because it is supported by substantial evidence in the administrative record, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I. Summary of Administrative Record**

On February 19, 2010, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of June 1, 2007, due to physical and mental impairments. (Tr. 143-46, 207). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On December 8, 2011, ALJ Samuel Rodner held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, and an impartial vocational expert. On March 2, 2012, the ALJ denied Plaintiff's application in a written decision. (Tr. 13-27). Plaintiff now seeks judicial review of the denial of her application for benefits.

1

Plaintiff was fifty-seven years old at the time of the administrative hearing and fifty-eight years old when ALJ Rodner issued his decision. (Tr. 10, 34, 143). She attended school through tenth grade, and her past work includes jobs as a housekeeper, nursing assistant, dishwasher, and laundry worker. (Tr. 26, 208-09, 238). Plaintiff alleges disability based primarily on asthma, anxiety and a learning disorder.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "reactive airway/chronic obstructive pulmonary disease; tobacco abuse; an adjustment disorder with anxiety and depressed mood; and a history of a learning disorder; and borderline intellectual functioning." (Tr. 15). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of medium work with the following limitations:

> She can lift and/or carry 50 pounds occasionally and 25 pounds frequently, but with no other exertional limitations. She must avoid concentrated exposure to extreme cold, extreme heat, humidly, and fumes, odors, dusts, gases, and poor ventilation. She is capable of perform one and two step tasks, which are static in nature. She can adapt to routine changes and interact on a superficial basis with co-workers, supervisors, and the general public. She further requires tasks that do not involve strict time or production pressures.

(Tr. 23). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, and RFC, the ALJ determined that Plaintiff is able to perform her past relevant work as a housekeeper, laundry worker, nursing assistant, and fast food worker. (Tr. 26-27). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

2

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to find that Plaintiff's impairments met the Listing requirements for Listing 12.05C; and 2) failing to obtain testimony from a medical expert. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for either DIB or SSI, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Listing 12.05C*

Plaintiff first assignment of error contends that the ALJ erred in finding that her impairments do not meet or equal the requirements for Listing 12.05(C). Upon careful

review and for the reasons that follow, the undersigned finds that the ALJ's decision is substantially supported.

Listing 12.05 provides as follows:

12.05 *Mental Retardation:* mental retardation refers to significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

- A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

- B. A valid verbal, performance, or full scale IQ of 59 or less; OR

- C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function OR

- D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence or pace; or
    4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements of a listed impairment, a plaintiff must satisfy all of the elements of that impairment. *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir.1987) (citing *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984)). Accordingly, under Listing 12.05(C), a plaintiff must first demonstrate that her impairment satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection C of 12.05. *See Foster v. Halter,* 279 F.3d

5

348, 354 (6th Cir.2001). Thus, a claimant will meet the Listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria...." *Carmack v. Barnhart,* No. 04–6152147 Fed.Appx. 557, *560 (6th Cir.2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added)).

The diagnostic description of mental retardation is as follows:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period: *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

"*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM–IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.,* 240 F. App'x 692, 698 (6th Cir.2007) (citing *Heller v. Doe by Doe,* 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM–IV, p. 49.B

In the present case, at step-three of the sequential analysis, the ALJ determined that Plaintiff's impairments do not meet or equal the requirements of any Listing. (Tr. 17-18.). Specifically, with respect to Listing 12.05C, the ALJ explained that Ms.

6

Armstrong did not meet this criteria because, among other things, although there was evidence of IQ scores below 70 from her childhood and from a 2010 consultative exam, these scores were unreliable and/or invalid. (Tr. 20). Plaintiff, however, contends that the ALJ improperly acted as his own medical expert in finding that her childhood IQ scores were invalid.

As noted by the Commissioner, the first scores in question are from childhood, and include Stanford Binet scores of 66, 60, and 58, when Ms. Armstrong was eight, eleven, and fourteen years old, respectively. (Tr. 394). Ms. Armstrong was also tested again when she was 17, and this time received scores of verbal - 73, performance -72, and full scale - 71, on the Wechsler Adult Intelligence Scale ("WAIS"). (Tr. 386). ALJ Rodner placed more faith in these latter scores, in part because the Stanford Binet scores were not broken down into relevant subsets, and because they varied rather significantly – among one another and from the latter WAIS scores. (Tr. 17-21). The ALJ's finding in this regard is substantially supported.

> Notably, Agency Regulations provide.
>
> Generally, the results of IQ tests *tend to stabilize by the age of 16*. Therefore, IQ tests results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.00, Section 10 (emphasis added). Thus, the ALJ's treatment of Plaintiff's childhood IQ score falls in line with Agency regulations.

More importantly, even assuming Plaintiff's childhood IQ score is a valid qualifying score, an IQ score standing alone, is insufficient to meet the Listing requirements of 12.05(C). As noted above, Plaintiff must first demonstrate that her

7

impairment(s) satisfies the diagnostic description for mental retardation within 12.05. In this case, there is no evidence in the record that she has been diagnosed with mental retardation, nor evidence that Plaintiff suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001).

It is well settled that a Plaintiff retains the burden at the third step of the sequential evaluation to establish that she meets or equals a listed impairment. *See Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987). In sum, the record does not contain valid IQ scores in the requisite range, no medical source has diagnosed Plaintiff with mental retardation, and Plaintiff has not submitted sufficient evidence pertaining to her lack of adaptive functioning prior to the age of 22 as required to satisfy Listing 12.05(C). Because it is her burden, at step three, to show that a listing can be met or equaled, Plaintiff's assignment of error should be overruled.

2. *Medical Expert*

Plaintiff next argues that the ALJ erred in failing to comply with SSR 96-6p because he did not retain and call a medical expert in order to testify as to the validity of Plaintiff's childhood IQ score. Plaintiff's assertion is unavailing.

Ruling 96-6p outlines the ALJ's discretion in determining whether an updated medical opinion is actually necessary. *See, also, Arno v. Astrue,* 2010 WL 5566835 (S.D. Ohio Oct. 8, 2010) (Abel, MJ) ("an [ALJ's] determination of whether a medical expert is necessary is inherently a discretionary decision) (internal cite omitted). Thus, the primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases. *See Richardson v. Perales,* 402 U.S. 389, 408, 91

8

S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Regulations provide that an ALJ may "ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. §§ 404 .1527(f)(2)(iii) and 416.927(f)(2) (iii). An ALJ's decision whether a medical expert is necessary, however, is inherently discretionary. *See* HALLEX I–2–5–32–34 (Sept. 28, 2005); See also *Hayes v. Astrue*, 2011 WL 901013 (S.D. Ohio Feb. 14, 2011) (Bowman, MJ) ("rarely is an ALJ required to obtain additional medical evidence"). Thus, there is no mandate requiring an ALJ to solicit such evidence. *See Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 189 (6th Cir.2009) ( "20 C.F.R. §§ 404.1527(f)(2) (iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony ..."). Ultimately, the ALJ is charged with the duty of evaluating the medical evidence on record and determining the claimant's RFC. See 20 C.F.R. § 404.154(c).

There is no showing in this case that the use of a medical consultant was necessary. As noted above, even assuming Plaintiff's childhood IQ score is a valid qualifying score, an IQ score standing alone, is insufficient to meet the Listing requirements 12.05(C). Plaintiff must first demonstrate that his impairment(s) satisfies the diagnostic description for mental retardation within 12.05. In this case, there is no evidence in the record that he has been diagnosed with mental retardation, nor evidence that Plaintiff suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001).

Accordingly, on this record, it was within the ALJ's discretion, to call or not to call a medical expert. Thus, the ALJ's reasonable exercise of that discretion should not be

9

overturned. For these reasons, the undersigned finds no merit in this assignment of error.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELODY ARMSTRONG,

    Plaintiff,

  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:13-cv-743

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).